Eva Marie HAMMAN et vir., Appellants,

v.

Gladys A. RITCHIE, Appellee.

No. 17796.

Court of Civil Appeals of Texas, Fort Worth.

Feb. 11, 1977.

Rehearing Denied March 18, 1977.

**700**

Law, Snakard, Brown & Gambill, and Robert M. Randolph, Jack Ray, Roy Hudspeth, Fort Worth, John R. Lindsey, Jacksboro, for appellants.

Sewell & Forbis, and James E. Forbis, Decatur, James M. Spiller, Jacksboro, for appellee.

## OPINION

MASSEY, Chief Justice.

On the appeal the Court is presented with an example of how *not* to provide a deferred bequest by will, how *not* to provide by will for property devise in trust, and how *not* to administer a trust estate.

Involved is tragic litigation between family members in which probability is that all will lose, coupled with possibility of resultant participation in the loss by the chil-

dren/grandchildren. Certainly these could not profit. Nevertheless, the decision of this Court upon the rights of parties litigant may not thereby be influenced. The parties must be treated as estranged by blood as is the situation otherwise. Occasion for the remark is because there must be retrial in part of the issues arisen in the case.

Eva Hamman, presently the wife of Blake Hamman, is the daughter of Gladys A. Ritchie by her former husband William R. Johnson, deceased. With occasional exceptions these parties will be hereinafter referred to by their first names. Often to be implied is that when Eva is referred to in the singular her husband Blake Hamman is included.

The appeal is by Eva and her husband from the take-nothing judgment rendered against them upon their suit against Gladys, and from the judgment for damages, actual and exemplary, awarded Gladys upon her cross-action.

Judgment is in part affirmed, in part reformed and affirmed, in part reversed and renderd, and in part reversed and remanded for retrial.

The part of the judgment which construes the will is affirmed; the part of the judgment which awards partition of the real estate is reformed so as to provide the deletion of one parcel, among many, which by the trial court was held burdened by a life estate and the same orderd to be partitioned without such burden and that there was not incumbrance upon Eva's estate, and as so reformed, affirmed; the part of the judgment which awards damages to Gladys upon her cross-action is reversed and here rendered in favor of Eva and her husband; and in all other aspects, the judgment is reversed and remanded to the trial court.

By her suit Eva sought relief as follows:

(a) Declaratory relief in construction of the provisions of the will of William R. Johnson, dated October 9, 1949, and to have defined the interest of Eva in the estate thereby created for her in trust, coupled with plea that there be cancellation of the trust and an award made to her of that part of her estate not already been delivered;

(b) Decree which would award to Eva and impose upon Gladys the duty to make an accounting of Eva's testamentary trust, inclusive of trust property to which Gladys held the life estate, with accounting for trust profits on the portion thereof to which Gladys· did not have the life estate;

(c) Decree which would award Eva and impose upon Gladys the duty to make an accounting upon that property constituting Eva's remainderman's interest in property devised by the Johnson will, in substance constituting William R. Johnson's community interest in a herd of valuable cattle (in which he owned an undivided 50% community interest with Gladys owning the other 50% community interest), and for cancellation of Gladys's life estate by reason of her abuse of the property and having committed waste;

(d) Decree which would award to Eva her damages against Gladys because of Gladys' waste of Eva's estate in trust, as applied to realty, during the period of its administration by Gladys as trustee;—and

(e) Decree which would settle title and right of possession of accounts containing funds representing commingled income from Eva's trust estate with Gladys' individual funds accumulated from income, for an accounting upon ·the whole as Eva's trust property, and for judgments *in rem* and/or *in personam*, with constructive trust impressed upon existent *in rem* property.

Relief sought by the cross-action of Gladys, erroneously awarded her by the judgment, was for damages resultant from the intentional, conscious, malicious, and tortious action of Eva and her husband in refusing to join with Gladys in the leasing of property in which Eva and Gladys stood in relation of tenants in common. By reason of the fact that there was refusal to join with Gladys in accomplishment of a lease to a third party there was undoubted failure to obtain profits for the benefit of both Eva and Gladys.

Not involved in the issues tried, save for Eva's plea for accounting upon profits, were 330 acres of land conceded to have been the separate property of William R. Johnson, and pursuant to provisions of his will, constituting property already delivered to Eva.

With the exception of jury findings indicating 80 acres to have been separate property of William R. Johnson given Eva by his will, as to which there was disregard of findings by the court upon motion, the judgment was founded upon the verdict returned by the jury. Essentially, the findings upon special issues reflected the following:

1. Not all the land claimed by Eva to have constituted the separate property of her father at time of his death was the separate property of her father;

2. At least one of the parcels of land claimed by Eva to have been her father's separate property actually was such (this was a finding disregarded by the court);

3. 80 acres out of G. W. Davis Survey A–179, conveyed by deed dated April 1, 1929, was the separate property of Eva's testator father (this was a finding disregarded by the court);

4. Eva did not suffer economic loss as the result of Gladys having dealt with herself (in violation of duty because she was trustee) in respect to the trust estate of Eva;

5. None was amount of damages to Eva as result of Gladys having dealt with herself in respect to her trust estate;

6. Gladys did not mix her own funds with those of Eva which Gladys obtained in trust for Eva;

7. Eva entitled to "none" as the dollar value of her loss of use of the Johnson Polled Hereford cattle herd in the future;

8. "Undermined (sic) by evidence" was jury answer to monetary amount, if any, Gladys earned as a profit from her operation of the Johnson Polled Hereford Ranch during term in which she held it in trust for Eva;

9. Gladys did not commit waste with respect to property in which she had received life estate interest by the will of her former husband, William R. Johnson;

10. During the term of the trust relative to Eva's land the reasonable rental value of the surface was $1.50 per acre per year;

11. As distribution of income from the trust, during its term, Eva received an amount sufficient to compensate her for the reasonable rental value of the surface of her land (Special Issue 12 not answered because conditionally submitted);

13. Gladys acted honestly and reasonably in the administration of Eva's trust estate;

14, 15, 16, and 17. $1.00 actual and $1.00 exemplary damages was Gladys' entitlement as amount lost by the arbitrary and unreasonable refusal of Eva and her husband to execute or ratify mineral leases arranged to be secured by Gladys upon lands in which Eva and Gladys were joint owners of the mineral interest.

### The Judgment

On motion of Gladys the jury findings by Special Issues 2 and 3 (that 80 acres was separate property of William R. Johnson) were disregarded. The contrary of the finding that the 80 acres was separate property of William R. Johnson was indisputably factually established. In view of Eva's failure to obtain a favorable finding as applied to any other land the jury verdict foreclosed any right of Eva as to any other land parcel. By a part of the judgment it was settled that title to all of the realty litigated was originally the community property of William R. Johnson and his wife Gladys and later realty as applied to which Eva and Gladys were cotenants.

The judgment provided as follows:

(a) that Eva and her husband take nothing by their suit;

(b) that by her cross-action Gladys recover $2.00 as damages, actual and exemplary;

(c) by declaratory judgment provisions found:

1. Eva and Gladys were joint-owners of designated property (reference to Exhibit B made a part of the judgment), with each of them owning a one-half undivided interest therein,—and with Eva's right subject to the life estate interest therein of Gladys,—that the property was subject to partition in kind (possessory rights of Gladys preserved for her lifetime);

2. Eva and Gladys were joint owners of certain designated property (reference to Exhibit A made a part of the judgment), with each of them owning a one-half undivided interest therein,—that the property was subject to partition in kind;

(d) the partitioning of all realty jointly owned with *in rem* decree upon title relative thereto,—with those properties of Eva to which Gladys held life estate designated and with those properties of Eva not thus burdened designated.

### The Points of Error

Eva and her husband have presented eighty-six points of error, which by their brief have been grouped for discussion, viz:

1. Gladys' failure, as trustee, to maintain records and to account; Gladys' self-dealing; Gladys' commingling of Eva's trust funds with her own funds, and, as commingled funds, that such constructive trust should be impressed, with an equitable lien awarded upon the whole as Eva's trust property and estate, with an accounting required by Gladys; the trial court's erroneous exclusion of evidence upon facts and circumstances of Gladys' administration of Eva's trust estate.

2. The entitlement of Eva to 1,807.69 acres, with judgment award of only 1,068.84 acres,—consideration given the William R. Johnson will creating the trust estate; the separate property of William R. Johnson not involved with the community estate; the widow's election of Gladys with consequent waiver of her right to claim any part of the property; Gladys' practical construction of the trust as covering properties in which she had no interest as cotenant; the errors relative to "the 80 acres" and to the "119.7 acres".

3. The court's denial of an accounting relative to the proceeds of Gladys' life estate in the herd of breeding cattle which she had sold, and the court's refusal to impose an equitable lien securing Eva's interest upon the proceeds from the sale of the same by Gladys which had converted in form into stocks, bonds, certificates of deposit, etc.

4. The error in the award of judgment for damages to Gladys because of the failure or refusal to Eva and her husband to join in the execution of mineral leases upon lands held in cotenancy with Gladys.

### Will of William R. Johnson

The material provisions of the will by which there was disposition of testator's property provided substantially as follows:

### III.

I devise and bequeath to my beloved wife, Gladys A. Johnson, in trust for my beloved daughter, Eva Marie Johnson, my interest in the—

(1) J. H. Jones Tract, comprising 456.48 acres out of the Earl Pearce Survey, and 427.60 acres out of the James P. Kemp Survey, in Jack County, Texas,

(2) The P. S. Jones Tract being 100 acres out of the James P. Kemp Survey, and

(3) The Jones Boys Tract, comprising 80.3 acres out of the J. W. Simpson Survey and 119.7 acres out of the North J. P. Kemp Survey, and

(4) The Gomer Owens Estate land, being 194.61 acres,

(5) 240 acres in Abstract 179, Grantee G. W. Davis and

(6) 189 in Abstract 455, Grantee John O'Neal _ _ _ all of said lands being located in Jack County, Texas.

The said trustee in the management, administration and disposition of the said properties shall have all of the powers given to trustees of express trusts under the Texas Trust Act.

The trustee shall pay to or for the benefit of Eva Marie Johnson such part of the net income of the said trust properties as the trustee in her exclusive discretion shall deem necessary or advisable in order to maintain and educate the said Eva Marie Johnson until the said Eva Marie Johnson becomes twenty-five (25) years of age and thereafter the said trustee shall pay to or for Eva Marie Johnson all of the net income of said trust until the said Eva Marie Johnson becomes thirty years of age at which time the trustee shall convey free of this trust to Eva Marie Johnson one-third (⅓) of the trust estate.

Thereafter all of the net income of the trust shall be delivered to the said Eva Marie Johnson during the continuation of the trust, provided, however, that in the trustee's discretion an additional one-half (½) of the remaining assets of the trust may be deeded and conveyed free of trust to the said Eva Marie Johnson on her thirty-fifth (35) birthday.

This trust shall terminate when Eva Marie Johnson reaches the age of forty (40) years at which time all of the trust properties shall be conveyed and delivered to her free of the trust.

## IV.

I devise and bequeath an undivided one-half (½) interest in all the separate real estate which I may own at my death, excluding, however, the properties hereinabove devised by me which are my separate properties, to my beloved wife, Gladys A. Johnson.

## V.

I devise and bequeath all of the rest and residue of my property to my beloved wife, Gladys A. Johnson, for her lifetime, and at her death all of such property shall go to my daughter, Eva Marie Johnson  .  .  ..

## OPINION

■ As applied to the parcels of realty specified the will is not ambiguous merely because some of the parcels were separate property of the testator and some land in which his was the community interest of 50% (Gladys owned the remaining 50% interest). Absent agreement, and by reason of the parties' dispute upon whether certain parcels were separate, there would be a necessity to investigate and determine which of the parcels in dispute were separate in order to apply the law after the necessary identification had been made. This would not constitute ambiguity in the will itself. Clearly the testator was giving to Eva whatever interest he had in the lands specified, and for purposes of testing the will it would be the full fee interest where the land parcel specified was found to be his separate property, and it would be his 50% undivided interest as applied to any land parcel in which his ownership was coupled with the community interest of Gladys.

■ Such determination was correctly made. Judgment in respect to title to the realty was erroneous in that a 119.7 acre land parcel was declared to be land in which Eva's one-half undivided interest was burdened with a life estate interest of Gladys. The fact of that error has been conceded by Gladys on submission of the appeal. The error is possible to be cured by a reformation of the trial court's judgment, and by our own judgment this will be accomplished.

Determined and identified as well was the "rest and residue" of the testator's real property in which Gladys was given the life estate and Eva the remainderman's interest. In the state of the record made below this was in substance the herd of cattle which William R. Johnson owned in community with Gladys at time of his death.

Undisputed by the evidence is the identification by which the litigation in this case would be controlled. It was testator's undivided 50% interest in the herd which was devised to Eva subject to Gladys' life estate interest. There was other personal property, but with this we are not concerned for there was no issue made as applied to it in the trial court. There was no ambiguity in the William R. Johnson will as applied to the cattle herd. There was no "widow's

election" to take under the will which in any way waived Gladys' right to retain any property already owned.

Permitted in evidence upon the first trial was some testimony concerning occurrences in the past which could have at one time given rise to litigious issues. As of time of trial below the passage of so many years had rendered impossible the litigation which "once might have been". By way of brief explanation: a few years after the death of William R. Johnson, Gladys remarried; the will (in a portion not copied) provided that Gladys' life estate in all of William R. Johnson's property not provided to be Eva's trust estate, including the herd of cattle and residual community interest in realty and personalty, should terminate if and in the event of Gladys' remarriage; Gladys did remarry; prior to her remarriage it became Gladys' desire that her life estate interest should not terminate but should persist despite her remarriage for her entire life; a suit was filed, in which Eva was made a party defendant, which in part had as its objective to provide that Gladys' life estate should continue in the event of her remarriage; on November 17, 1950, time of the judgment in that case, Eva was of age and was a party thereto whose interests obviously would be adversely affected in the event of Gladys' remarriage—even prior thereto Eva had been in court and had her disabilities of minority removed; as a result of and because of the judgment, Gladys did and does still continue to possess the life estate in the property, with Eva's possessory rights as remainderman deferred so long as Gladys shall live.

Ultimately, and after Gladys' remarriage, the deferment of her right to possession of her estate came to be resented by Eva. The institution of the instant litigation was a culmination. However, none of the foregoing could be of importance to the issues of the instant case. There was not, nor could there have been, relitigation by bill of review upon the issues settled by the judgment of November 17, 1950. Gladys, as an individual, was a party to that case though she was not a party in her capacity as trustee for Eva's estate. Gladys' liability, if any, as an individual could not antedate November 17, 1950, though her liability, if any, as trustee would not be so limited. In other words, it would only be as applied to Gladys' impropriety of action as trustee to the alleged injury of Eva's trust estate, that evidence would be admissible upon any occurrence prior to November 17, 1950.

■ Although upon retrial the matter of Gladys' misconduct in respect to committing waste to Eva's estate interest in realty might be a question, it is not a problem on the instant appeal. On a waste question the measure of damages would be the difference in market value immediately before and after action as applied to any particular parcel of land upon which waste was alleged to have been committed. There was nothing proved on trial below relative to market value by which damages resultant from waste could be measured, either before or after any action (or non-action) on the part of Gladys. The same would be true as a principle of law applicable to damages to Eva's remainderman interest in the herd of cattle. Of this there was no proof. It was not shown that at any time there was diminishment of the herd either in number of animals or value. By near undisputed evidence Gladys' care of the cattle herd was exceptional. It grew in size and apparently there was increase in average value as applied to its individual members. It is obvious, however, that Gladys did not fully understand the legal consequences of ownership of the life estate interest in a herd of cattle where another was vested with a remainderman's interest.

■ Roughly stated for purposes of accounting upon retrial, we believe that a proper treatment of the corpus of Eva's remainderman's interest in the "herd" of cattle would be to take the number of cattle and their value, at 100% (with calculation of Eva's 50% interest to be at any stage determined by appropriate division) and to determine the average value per animal at time of creation of Eva's interest. By the inventory of the estate of William R. Johnson shown in the evidence, 558 animals com-

prised the original herd, its total valuation being $99,571.00. Each (average) animal was shown to have the value of $169.33. Without evidence that there had been decrease below 558 animals in the herd until it was sold, there would be propriety in considering 558 to have ever been the size of the herd for any necessary purpose of determining the value of "Eva's herd" at any subsequent time. It would only be necessary to obtain expert (or owner's) appraisal of an "oversized" (i.e., more than 558 animals) herd value at any particular time, divide it by number of animals, and the value of each animal (by average) thereby determined. By multiplying the value of the average animal by 558 one would know the value of "Eva's herd", in any necessary determination of her remainderman's interest.

From Eva's standpoint the "herd" would ever have been 558 animals, or 558 multiplied by the value of each (average) animal to determine the total herd value. Eva, or someone for her, could at any time determine the value of her interest if and in the event there should then be a termination of Gladys' life estate. Of course, Eva's interest was 50%, meaning that such should enter into any calculation of her remainderman's interest.

The foregoing is somewhat simplified, and is able to be thus stated because it appears that there was never any fewer animals in the herd than 558. There would be qualification of the statement if calves and their value be calculated as a different classification from mother cows, and if bulls and their value should be calculated as a different classification from cows, or heifers, etc. This would be a matter for the consideration of the court upon retrial, and perhaps matter to be taken into consideration in the accounting. There should be direction and control by the court in the accounting prior to retrial, and a provision for alternatives in procedure if value of calves, cows, bulls, etc., should be treated as in different property classifications.

■ Prior to the time Eva's suit was filed there had been a sale of the herd; a conver-

sion of the form of the corpus of Eva's remainderman's interest as applied thereto. This could not have affected Eva's rights though it certainly entitled her to have Gladys make an accounting. Eva was never entitled to the herd increase or profits, if any, nor was she nor will she, during Gladys' lifetime, be entitled to the profits from the use of the corpus as converted into stocks, bonds, certificates of deposit, etc. Eva has ever been and will continue to be entitled to be informed relative to the state of the corpus. It was the privilege of Gladys to make the conversion in form, reinvest the proceeds from sale, etc., because she was rightfully the possessor of the life estate. *Wagnon v. Wagnon,* 16 S.W.2d 366, 370 (Tex.Civ.App.-Austin 1929, writ ref'd).

As an observation we remark that unless the evidence on retrial differs materially from that on original trial there would not be justification for imposition of lien on the stocks, bonds, certificates of deposit, etc., in which Eva possesses the remainderman's estate. Gladys has obviously exercised business acumen in the preservation of the corpus of that estate and her possession does not constitute a threat of its destruction.

■ To be reversed and rendered is the portion of the trial court's judgment which awarded damages to Gladys because of the malicious refusal of Eva and her husband to join her in the execution of oil and gas leases on property to which the parties stood in the relation of cotenants. The element of trust is not involved. It appears that there had been a termination of the trust before the refusal. The property involved was land in which the parties adversary had relation as cotenants. There is no duty in such a case for either cotenant to join with the other in leasing the property for oil and gas purposes.

■ An owner of land in cotenancy is not trustee for the others who may be his cotenants and there is no fiduciary obligation owed by any one of them to the others. Each acts for himself and, absent an addi-

tional reason as by contract, neither has the authority to act for the others. Should one produce oil and/or gas from the land without consent of the others the production would not constitute waste. *Burnham v. Hardy Oil Co.,* 147 S.W. 330, 335 (Tex.Civ. App.-San Antonio 1912), aff'd 108 Tex. 555, 195 S.W. 1139 (1917); 2 Williams & Meyers, Oil & Gas Law (1975), Ch. 5, "Concurrent and Successive Interests", § 502, "Right of Concurrent Owner to Sever Oil and Gas"; 3A Summers, The Law of Oil & Gas (1968), § 609.1, "Concurrent Ownership of Mineral and Royalty Interests in Oil and Gas." That being the right of a cotenant he may by lease of his right in the land to another transfer the same for the purpose. Where this is done and production of oil and/or gas is obtained, the other cotenants are privileged to either recognize and adopt the lease as of their interest as well, so as to be entitled to their fractional interest in the royalty, or to reject it and be entitled to their fractional part of oil and/or gas produced, less a proportionate part of the cost of discovery and production. *Cox v. Davison,* 397 S.W.2d 200 (Tex.1965); 5 A.L.R.2d 1368, Annotation: "Basis of computation of cotenant's accountability for minerals and timber removed from the property".

The remainder of the case has in part a relation to the alleged intermingling of Eva's trust funds with the funds of Gladys (at least in part comprised of Gladys' profits from her personal interest in profits from her own estate). The trust funds of Eva which were commingled were, in principal part, those to which she was entitled as profits from her estate. Eva claims that as a consequence she is entitled to have the whole of the accounts where this occurred impressed with a constructive trust for her benefit.

Also involved is Eva's demand for Gladys to account for earnings from her trust estate which Gladys had not delivered, including amounts actually received from third persons for use of the surface of land owned by her in the entirety, and for compensation because of Gladys' use of her interest in the surface of land owned in joint-tenancy. Eva claims entitlement to Gladys' entire profits as compensation where the use was by Gladys for her own purposes at times when Gladys acted as trustee; averment being that such is the proper measure of the beneficiary's entitlement when there is unauthorized use of trust property for the trustee's individual profit. Her claim includes the profits, during trusteeship, of Gladys' use of the 330 acres of land which had been the admitted separate property of her father, though the title to such property is not an issue in the case.

Concerning the foregoing we could write so as to unduly lengthen the opinion. We deem it obvious that in may respects there was error in the trial and judgment rendered below in the denial of the accounting demanded by Eva. Since she did not obtain it and it was denied her by the judgment she is entitled to have this aspect of her case reversed, with remand for another trial. The accounting will necessarily embrace available (at least to some extent) amounts in money "claimed" as intermingled funds, "claimed" as withheld and not delivered, "claimed" to have been earned as profits by Gladys' use of Eva's land while she was trustee, etc.

We have concluded that the preferable method to proceed would be to speak of the law to be applied by the trial court upon retrial.

There will, of course, be issues to be tried by a jury if such is demanded. Preliminary thereto, however, the circumstances would appear such as to make necessary the appointment of a Master in Chancery. Necessary to be enlisted will be the aid of an accountant under his direction. Obviously several hearings must be conducted by the Master in Chancery, by discoveries obvious to be made during the piecemeal auditing which will be essential and for the Master's guidance of further audit procedures.

In the accounting aspect there will obviously be too great complexity for jury trial. With alternative methods of calculation perhaps to be directed by the court in anticipation of issues to be tried by jury in

determination of that proper calculation to be applied in the judgment determination, the court can resolve all issues upon accounting without the aid of a jury. 1 Tex.Jur.2d p. 351, et seq., "Accounts and Accounting", § 104, et seq., relative to "Suit for Accounting".

Perhaps the attorneys for the parties would be able and willing to narrow the scope of investigation upon prehearing that there might be a reduction in the amount of the Master's labor, and consequent reduction of the time to be required by him before the proper jury issues could be delineated to be tried to a jury.

It is the demand of Eva and her husband that there be the accounting, whereby the proper order of the court would be for the payment or provision for payment in advance, with credit for such made to the costs to be ultimately taxed at time of the final judgment.

October 25, 1954 Eva attained the age of 25 years and this was the date after which, by the William R. Johnson will, she should have received all of the net income (from the leases, etc.) of the trust land received from third parties, and, unless there was consent by her as well as her trustee that Gladys (as an individual) use her land, recovery from Gladys of her profits, if any. Necessary accounting procedures will immediately become laborious in the attendant investigation of a Master in Chancery.

■ Observable is that matter is involved in this case where plea or pleas of limitation might be filed upon occasion of retrial. None was filed pursuant to the prior trial. The trial court should insist that if Gladys intends to file any plea or pleas of limitation it be attended at an early stage that wherever possible the questions to thereby arise might be resolved, perhaps in advance of labors by the Master and accountant. Of course, one is not required to plead limitation and many have moral or religious scruples against so doing. Gladys did not present such a plea upon the occasion of the first trial.

■ We take occasion to remark the necessary accounting complication in a discussion. October 25, 1959 Eva attained the age of 30 years. By the will of William R. Johnson Eva was at this time to be delivered one-third of the trust estate. Beginning this date and for the succeeding ten year period Eva herself, not the trustee, had the obligation to attend the collection of one-third the income from her trust estate, with the trustee continuing under burden of the trust obligation to collect the other two-thirds for her and deliver it over. As applied to her land the one-third interest would be a percentage of Eva's one-half interest or whole interest, as the case might be. As applied to land parcels in which Eva would be presented as cotenant with Gladys as an individual Gladys would be privileged to use a percentage of Eva's land without accountability, though where it continued to constitute Eva's trust estate Gladys would be accountable as trustee; and, where used "against the trust" and in violation of a trustee's fiduciary duty Gladys would, as an individual, be obligated to Eva, as the trust beneficiary, for profits. Observable as applied to the will provision, is that there will be a difficulty for the accountant, one considerably increased above that involved before Eva reached age 30.

October 25, 1964 Eva attained the age of 35 years. At Gladys' option by the William R. Johnson will she was privileged, but not required to deliver over to Eva one-half (½) of the two-thirds of the remaining assets of the trust (meaning one-half (½) of two-thirds of the trust lands) plus income to the trust from third-persons held by her as trustee and not delivered to Eva when she became 25 years of age on October 25, 1959, if any not theretofore delivered. Gladys had the option. Unclear on the original trial is whether she did or did not exercise the option. The matter should be settled upon retrial, with determination of the portions conceded to have been delivered, and with the portions as applied to which there is controversy established. Thereby would be supplied some guidance for the Master in Chancery and accountant. Complication of

the labors of the accountant is obvious by Eva having become 35 years of age.

October 25, 1969 Eva attained the age of 40 years and by the William R. Johnson will she was entitled to have delivered the remainder of her trust estate in the realty so that her title and possession would be completely vested; and she was entitled to have delivered to her all of the accumulated and undelivered income from the rentals theretofore received by Gladys for property use by third persons (at least as accumulated from the two-thirds undivided interest directed to be delivered on October 25, 1959 when Eva became 30 years old—presumed to have been received by Gladys for delivery to her as income), or, perhaps, dependent upon whether there was exercise of the option by Gladys on or after October 25, 1964 (when Eva was 35). At age 40 Eva was entitled to have delivered to her all of the accumulated and undelivered income from the rentals, etc., on the realty, at least as accumulated from the lands exclusive of the additional one-half (½) of the two-thirds, in addition to the one-third (⅓) delivered on October 25, 1959 when she was 30 years old.

Unless issues are narrowed for purposes of retrial it is conceivable, even with availability of the essential accounting and report of the Master in Chancery, that the questions for jury consideration might include:

(a)  Question of the value of the herd of cattle in which Eva owned the remainderman's estate together with issues upon the value of its corpus as of the time of the conversion in form of the herd.

(b) Questions upon Eva's entitlement pursuant to her charge that there was commingling of her trust funds (income, etc.) in the accounts which also contained individual funds of Gladys. Should Eva discharge her burden of proof to show that there was commingling in any particular fund (and, perhaps its maximum amount while the funds were commingled) so that she would be entitled to go to the jury and, should she prevail become entitled to have an equitable lien upon the fund remaining, etc., to the extent of her interest. Restatement of the Law, Restitution, ch. 13, "Following Property", § 211, "Effect of Withdrawals from Mingled Fund".

As opposed to Eva's entitlement, if any, Gladys, in the event she raised an issue thereon, could become entitled to go to the jury as to what, if anything, should be deleted in order that there might be established Eva's correct total entitlement as applied to any particular commingled fund. *Newland v. Newland*, 529 S.W.2d 105 (Tex. Civ.App.-Fort Worth 1975, writ dism'd); *Eaton v. Husted*, 141 Tex. 349, 172 S.W.2d 493, 497–499 (1943). Note that Gladys' guilt or innocence is of no consequence; nor would the question of whether Eva suffered economic loss be of any importance.

(c)  Question upon whether in fact there was exercise of option of Gladys to deliver to Eva—at or after she was 35 years of age and before she was 40 years of age—any part of the two-thirds of the assets remaining after Eva became 30 years of age and, if so, what had been delivered and when delivery was made.

(d) Questions upon the profits obtained by Gladys in the event Eva should show that there was,—in any particular year and as applied to any particular parcel of real property in which she had the whole or a percentage interest at a time when Gladys was trustee for her interest therein, —a use of her beneficial interest by Gladys in violation of her responsibilities as trustee. Eva would be entitled to go to the jury on a restitution theory should she make out a case upon Gladys' violation of her duty as trustee to obtain profit, with the whole of such profit to be declared Eva's in view of the trust violation. As opposed to Eva's entitlement, if any, Gladys would be entitled to prove and have credit by way of set-off to the extent such profits were actually paid to Eva, if any; or, if there had been settlement of any part of such actual or potential dispute over Eva's entitlement because of Gladys' use at a time when there was full disclosure to Eva or knowledge on her part, a credit therefor by extinguishment of what had already been settled.

On possible jury questions dealt with in Section (d) of the preceding paragraph reference is made to circumstances where Gladys, as trustee, might owe Eva "profits". Restatement of the Law, Restitution, ch. 13, "Following Property", § 202, "Conscious Wrongdoer". In Texas the trustee in such circumstances is treated as a wrongdoer whether he was or not, or in any event the profits are the entitlement of the trust benefactor. *Slay v. Burnett Trust*, 143 Tex. 621, 187 S.W.2d 377 (1945). Where the trustee has been found to have been guilty of self-dealing with trust funds the trustee's liability as an individual is ascertained by the court as a matter of law. *Langford v. Shamburger*, 417 S.W.2d 438, 444, 446 (Tex.Civ.App.-Fort Worth 1967, writ ref'd n.r.e.). As applied to property in existence there might be appropriate *in rem* adjudication; as applied to that which has been removed so that it cannot be followed there may be appropriate *in personam* adjudication against the trustee.

That portion of the judgment which makes the construction of the William R. Johnson will is affirmed. That portion of the judgment which adjudicates title to real property in dispute is reformed so as to provide that the 119.7 acres of land in the J. P. Kemp Survey, A–323, Jack County, Texas, more particularly described in deed dated November 14, 1939, recorded Vol. 111, Page 492, Deed Records Jack County, Texas is land in which Eva Hamman owns an undivided 50% interest which is not in any way encumbered by any life estate in Gladys A. Ritchie and is not land Gladys A. Ritchie is entitled to retain and use for her lifetime; and as so reformed such portion of the judgment making the decree upon title and ordering its partition, as one of many land parcels to be partitioned, is affirmed. That portion of the judgment which awards damages to Gladys A. Ritchie against Eva Hamman and Blake Hamman is reversed, with judgment rendered that Gladys A. Ritchie take nothing by her suit in cross-action against Eva Hamman and Blake Hamman. Except for our action in the foregoing respects the judgment of the trial court is reversed and remanded for retrial.

Costs are taxed 50% against Eva Hamman and Blake Hamman and 50% against Gladys A. Ritchie.

HUGHES, J., not participating.