Michael WARNER, Appellant,

v.

IRVING LUMBER COMPANY, Appellee.

No. 19833.

Court of Civil Appeals of Texas, Dallas.

July 5, 1979.

Rehearing Denied Aug. 6, 1979.

Bertran T. Bader, III, Bader & Cox, Dallas, for appellant.

Denise A. Bretting, Coke & Coke, Dallas, for appellee.

Before GUITTARD, C. J., and STOREY and HUMPHREYS, JJ.

STOREY, Justice.

This appeal by Michael Warner, who was plaintiff and cross-defendant in the trial court, presents two questions for review: First, whether plaintiff waived service of citation on defendant's counterclaim, or by invoking the trial court's jurisdiction, entered an appearance; and second, whether defendant's proof of damages is sufficient to support the judgment on the counterclaim. We conclude that there is sufficient evidence to support the trial court's finding that plaintiff entered an appearance, and therefore answer the first question in the affirmative. However, we agree with plaintiff's contention that proof of damages is insufficient to support the judgment, and on this ground reverse and remand.

Tex.R.Civ.P. 124 provides: "In no case shall judgment be rendered against any defendant, unless upon service, or acceptance or waiver of process or upon appearance by defendant . . . ." The rule is well settled that a defendant who has entered his appearance in the main case is before the court for all purposes and a judgment may be rendered against him on a co-defendant's cross-claim without the necessity of citation. But as to a plaintiff, the filing of his suit does not so invoke the jurisdiction of the court to litigate the subject matter of a counterclaim so as to dispense with the necessity of service, acceptance, waiver of process, or of a further appearance after the filing of a counterclaim. *Early v. Cornelius,* 120 Tex. 335, 39 S.W.2d 6, 8 (1931).

It is admitted that no citation issued on defendant's counterclaim and that no express waiver of service was made by plaintiff. Defendant contends, however that plaintiff entered an appearance after the filing of the counterclaim in three separate instances. First, in acquiescing in the trial court's pre-trial order, although admittedly plaintiff did not appear at pre-trial; second, in verbally agreeing to a resetting or continuance after the filing of the counterclaim; and third, by the filing of a motion for nonsuit. We agree with defendant's second ground and, consequently, do not consider the others.

Plaintiff acknowledges that the filing of a motion for continuance or resetting after the filing of a counterclaim is sufficient to invoke the jurisdiction of the court on the counterclaim. Plaintiff argues, however, that in this case, the evidence is insufficient to support the trial court's finding of fact in this regard. The record reflects that plaintiff's suit was filed on August 23, 1976, and on September 20, 1976, defendant answered by special exceptions and general denial. On January 27, 1977, defendant filed its first amended answer which contained special exceptions, a general denial and a counterclaim for damages arising out of the same sub-contract sued on by plaintiff. The case was set for jury trial on June 5, and on or about that date, was reset for trial on December 5, 1977. On this latter date, plaintiff's motion for nonsuit was filed and granted. The case went to trial on defendant's counterclaim on June 19, 1978. Plaintiff did not appear at trial.

The trial court made findings of fact that subsequent to the filing of defendant's counterclaim, plaintiff requested the court to postpone the trial setting on June 5, 1977, and continue the case; that the clerk of the court had the authority of the court to continue the trial of a cause and reset such cause upon agreement of all counsel so long as the case had not been on the court's docket for more than two years; that plaintiff's request for continuance and resetting was granted by the court and the cause was reset for trial on December 5, 1977; that in June 1977, and at the time plaintiff requested the continuance, defendant's counterclaim was on file in the cause. Among its conclusions of law, the trial court found that plaintiff took affirmative action in the furtherance of this cause following the filing of defendant's first amended original answer and counterclaim by requesting a continuance and agreeing to change in the setting of the case; that in taking such action, plaintiff made an appearance for all purposes subsequent to the filing of defendant's counterclaim. Plaintiff claims that these findings and conclusions are not supported by the evidence.

At trial, the clerk of the court testified as follows:

Q With regard to those notations looking over what is entitled "Notice of Assignment", the three words say what?

A Jury trial.

Q "Jury trial December 5, 1977. Plaintiff to notify"

A Right

Q Can you explain how that came about?

A When someone calls on the phone, and asks for a setting, sometimes I will give it to the secretary or the attorney and I make a notation they are going to notify.

Q In this particular case, did the plaintiff make a request that the case be reset from June to December?

A I don't recall the dates. I would have to check the file.

Q Did the plaintiff request the case be reset?

A The plaintiff requested that the case be reset. In looking through the file, I notice I did send a notice also to that effect.

Q But the plaintiff did request a resetting in this case?

A Right.

It is well settled that a court of civil appeals cannot substitute its findings of fact for those of the trial court if there is any evidence of a probative nature in the record to sustain the trial court's findings. *Cavanaugh v. Davis,* 149 Tex. 573, 235 S.W.2d 972, 977 (1951); *Chitsey v. Pat Winston Interior Design, Inc.,* 558 S.W.2d 579, 581 (Tex.Civ.App.—Austin 1977, no writ); *Foundation Reserve Insurance Company v. Wesson,* 447 S.W.2d 436, 437 (Tex.Civ.App. —Dallas 1969, writ ref'd). We conclude the trial court's finding is supported by the evidence and therefore overrule plaintiff's point.

■■ We hold that plaintiff has invoked the jurisdiction of the court by agreeing to the resetting and thereby entered an appearance on the counterclaim. *McElyea v. Parker,* 125 Tex. 225, 81 S.W.2d 649, 652 (1935). Such appearance, however, does not relieve defendant here of the burden of proving the unliquidated damages alleged in the counterclaim. Plaintiff's nonsuit left him in the position of *nihil dicit* with respect to the counterclaim. *Evans v. McNeill,* 41 S.W.2d 268, 269 (Tex.Civ.App.— Austin 1931, writ dism'd). Even in this situation, the amount of unliquidated damage is not confessed and must be established by evidence. *Gilder v. McIntyre,* 29 Tex. 89, 91 (1867); *Spivey v. Saner-Ragley Lumber Co.,* 284 S.W. 210, 215 (Tex.Com. App.1926, opinion adopted); 4 McDonald, Texas Civil Practice § 17.25 at 127 (Rev. 1974).

We find the evidence insufficient to support the judgment. Defendant's counterclaim declared upon a written sub-contract in which defendant was the general contractor and plaintiff the sub-contractor. Defendant alleged that after plaintiff left the job, there was found "certain deficiencies and problems with the work performed by plaintiff," and that defendant was compelled to expend $11,291.66 to remedy the deficiencies and problems. The alleged deficiencies and problems consisted of about 95 items which were listed upon an exhibit attached to the pleadings. Also attached to the pleadings, was a copy of the sub-contract which defined the work to be performed by plaintiff. The work consisted of framing, sub-flooring, roof trusses and decking, windows and doors, and related general carpentry work. The contract further provided: "This contract may be terminated at any time by either party."

■■ No complaint is made of a wrongful termination, and both parties seem to agree that the contract was in fact terminated by the plaintiff when he left the job prior to its completion. The complaint is confined to the deficiencies and problems found to exist after plaintiff left the job. The question raised is simply whether the deficiencies were items of work which plaintiff did not complete or which he was not required to do under the sub-contract;

or whether they were items which the defendant was compelled to repair or change because of poor workmanship on the part of the plaintiff. The general rule is that the correct measure of damages resulting from the breach of a building contract is the reasonable cost of remedying the defects which constitute the breach. *County of Tarrant v. Butcher & Sweeney Construction Company,* 443 S.W.2d 302 (Tex.Civ.App.—Eastland 1969, writ ref'd n.r.e.); *Cooper Concrete Company v. Hendricks,* 386 S.W.2d 221 (Tex.Civ.App.—Dallas 1965, no writ). Here defendant's proof failed to distinguish those items, if any, which plaintiff performed in an unworkmanlike manner from those which he simply failed to complete. Plaintiff was not obligated on the latter items because the contract gave him the option to leave the job and terminate the contract at any time.

While the greater part of the exhibit listing the problems and deficiencies is unreadable, it can be ascertained from it that certain items might not have been included in the work to be performed by plaintiff. No proof was offered to explain these questionable items. The only testimony offered was that of defendant's construction supervisor, who testified as follows:

Q Pursuant to that contract, did Michael Warner provide certain services on the job known as Ivey Apartments?

A Yes, sir.

Q Did he complete that work?

A No, sir.

Q Did he at any time leave that job?

A Yes, sir.

.    .    .    .    .

Q I show you now what has been marked as Plaintiff's Exhibit 4 and ask if you can identify it.

A Yes, sir.

Q What is it?

A It is the extra work and stuff he had left and we had to go back and finish up.

The witness later testified that the list consisted of items he had to go back and correct, but it is apparent that it contains a great amount of work not commenced or not completed. No attempt has been made by defendant to prove the cost of repair or completion of any single item, but only an aggregate amount was attributed to the entire list. No testimony was offered to prove that the expenditures were reasonable or necessary, and none was offered to show that the list was prepared by anyone having any personal knowledge of any defect. We conclude the proof of unliquidated damages is factually insufficient to sustain the judgment.

■ Defendant also included in his counterclaim a sworn account in the amount of $208.52 for materials furnished to plaintiff. This being a liquidated amount, verified by the pleading, defendant is entitled to judgment; however, there is no pleading or proof to support the excess interest of 1½% per month allowed by the trial court. The judgment for the liquidated amount will therefore be affirmed and interest allowed at the legal rate from date of judgment.

In view of our disposition of the case, the attorney's fees allowed defendant should be reversed and remanded for determination upon retrial.

Affirmed in part and reversed and remanded in part. Costs of appeal will be divided equally between appellant and appellee.