**David CRENSHAW et al., Appellants,**

**v.**

**Elizabeth SWENSON et al., Appellees.**

**No. 13213.**

Court of Civil Appeals of Texas, Austin.

Dec. 31, 1980.

Rehearing Denied Feb. 18, 1981.

---

Mason Terry, Austin, for appellants.

John F. Morehead, Daugherty, Kuperman, Golden, Carlisle & Morehead, Austin for appellees.

SMITH, Justice.

This is an appeal from judgment entered in the 261st District Court of Travis County. Appellants, David Crenshaw and Robert Brown, and three others who do not join in this appeal, sued appellees, Elizabeth Swenson and Swenson Corporation, for breach of fiduciary duty, commingling of partnership funds, violations of the Texas Real Estate License Act, and negligent construction of partnership property. The trial court entered judgment that appellants take nothing with the exception of $3,886.00 awarded David Crenshaw for payment of sums lent to the partnership. It is from this take nothing judgment that appellants have duly perfected their appeal to this Court.

In November, 1972, a limited partnership known as Rolling Hills Majestic Homes (Group I), Ltd., was formed for the purpose of building four homes for ultimate sale in the ordinary course of business. The general partner of the limited partnership was Occidental Syndicated Investments, a partnership originally consisting of Elizabeth Swenson, Robert Johnson and James Cooper. Subsequent to the execution of the partnership agreement, both Robert Johnson and James Cooper resigned as general partners. The limited partners were Elizabeth Swenson and her husband, Verner Swenson, Martin Cooper, Robert Brown, Laurence Cranberg, David Crenshaw and Gaylon Stewart. Crenshaw contributed $16,000, while Brown contributed $2,000.

Under the partnership agreement, the limited partners were to invest $40,000.00 capital contributions. Of this capital contribution, $28,000.00 was used to purchase four lots owned by appellees, Swenson Corporation, a corporation solely owned by Elizabeth and Verner Swenson. After the lots were purchased, it was contemplated the partnership would obtain a construction loan to finance the building of houses on the lots. The prospective interim lender, however, refused to lend money to the limited partnership, but agreed to lend money to the Swenson Corporation. As a result, the general partners transferred title to the lots back to the Swenson Corporation so that the property could be used as security for the construction loan.

At this point, Elizabeth Swenson decided to have Swenson Corporation act as the general contractor and build the four houses. There was no written construction contract entered into by Majestic Homes and Swenson Corporation for this work and prior to this time neither Elizabeth Swenson, her husband, nor Swenson Corporation had any experience as a general contractor.

Elizabeth Swenson testified that Swenson Corporation was to be paid for the actual labor and materials used in the construction of the four houses plus a 10% fee for the intangible services which the Swenson Corporation furnished at its expense.

The four houses were built, and two of them sold soon after completion. Two others were not sold until after an extended period of time.

The proceeds from the sales of the first two houses, known as "Shangri-La" and "Creekbluff," were deposited directly into the Swenson Corporation's bank account to cover ostensible expenses which had been incurred by the corporation for the benefit of the partnership.

The two remaining houses, "Parkview" and "Retreat," were not sold immediately, but underwent a series of refinancing. In August, 1974, a transaction regarding "Parkview" occurred between Swenson Corporation as grantor and Verner Swenson as grantee. The sum of $9,903.47 was deposited in Swenson Corporation's bank account labeled as "Parkview Reimbursement." "Parkview" was not sold during the next three years but was rented to two different tenants. Rental payments from "Parkview" in the amount of $2,000.00 were deposited in the corporation's bank account. When finally sold in July, 1977, "Parkview" incurred a loss of $6,423.82 above the mortgage.

A similar transaction took place regarding "Retreat." "Retreat" was transferred to a buyer in an assumption sale and then transferred back to the partnership by a "contract for deed." The buyer then became a tenant and made monthly rental payments of $265.00. After this party moved out, several rent-purchase option contracts were entered into, however, none was ever consummated. In December, 1978, "Retreat" was finally sold to architect John Lloyd for $74,500.00. As a result of defective construction of "Retreat" Lloyd spent $7,859.60 in repairing the house.

On all sales, appellee acted as a commissioned broker as was authorized in the partnership agreement, as well as general partner for the partnership.

In June, 1977, fearing misapplication of the funds to be received from the sale of "Retreat," appellants sought and were granted a temporary injunction against further disbursement of partnership funds. The limited partners then requested an accounting of the partnership affairs. After adjusting the accounting by $75.65, the trial court found the accounting to be true and correct.

Following the accounting, appellants brought suit against appellees, Elizabeth Swenson and Swenson Corporation, alleging breach of fiduciary duty on the part of Elizabeth Swenson; commingling and conversion of partnership funds on the part of both Elizabeth Swenson and Swenson Corporation; violations of the Texas Real Estate License Act on the part of Elizabeth Swenson; and negligent construction of partnership property by the Swenson Corporation. After a trial before the court, the district court entered judgment favorable to appellees. Upon request, the court filed findings of fact and conclusions of law. The court found that: 1) there was no damage suffered by the limited partnership as a result of conveying to the Swenson Corporation the legal title of the four lots; 2) the accounting of appellees, as amended by the court, was true and correct; 3) there was no commingling of goods or monies; 4) the Swenson Corporation was responsible for repairs to "Retreat" in the sum of $7,859.60; 5) David Crenshaw had lent the partnership $4,586.00 and was still owed $3,886.00; 6) Elizabeth Swenson had lent the partnership $11,135.00 and was still owed $10,670.00; 7) Elizabeth Swenson was owed a real estate commission in the sum of $4,470.00; and 8) the limited partnership owed the Swenson Corporation $7,471.90, the net figure after deducting the cost of repairing "Retreat."

The trial court thus entered judgment that David Crenshaw was entitled to joint and several judgment for $3,886.00 against the general partner of the limited partnership and against the limited partnership; other than that, appellants take nothing.

Further, a debt of the limited partnership as a part of the real estate commission was to be paid to an agent of Elizabeth Swenson; and the balance of the funds were to be paid to Elizabeth Swenson and the Swenson Corporation as their interest dictated.

We will affirm in part and reverse and render in part.

Appellants have brought forward twenty points of error which we perceive to present four basic complaints. These are that the trial court erred in failing to find: 1) Elizabeth Swenson breached her fiduciary duty; 2) Elizabeth Swenson commingled and converted partnership funds; 3) Elizabeth Swenson violated the Texas Real Estate License Act; and 4) the limited partnership was entitled to three times the admitted sum of damages relating to the construction of "Retreat."

Appellants contend that the trial court erred in failing to find that appellee, Elizabeth Swenson, breached her fiduciary duty of loyalty to the partnership and to the limited partners. In this regard, appellants assert that they are entitled to equitable restitution of their capital investment.

■ It is axiomatic that a managing partner in a general partnership, owes his co-partners the highest fiduciary duty recognized in the law. *Huffington v. Upchurch*, 532 S.W.2d 576 (Tex.1976). In a limited partnership, the general partner acting in complete control stands in the same fiduciary capacity to the limited partners as a trustee stands to the beneficiaries of the trust. *Watson v. Limited Partners of WCKT, Ltd.*, 570 S.W.2d 179 (Tex.Civ. App.—Austin 1978, writ ref'd n. r. e.). We must then, in deciding this case, do so under the laws applicable to trusts.

■ Included in the fiduciary duty which the trustee (general partner) owes to the beneficiaries (limited partners) is the duty of loyalty. Not only is it his duty to administer the partnership affairs solely for the benefit of the partnership, he is not permitted to place himself in a position where it would be for his own benefit to violate this duty. Scott, Trusts (3d Ed.) Sec. 170; *Southern Trust & Mortgage Co. v. Daniel*, 143 Tex. 321, 184 S.W.2d 465 (1944).

The finding of fact by the trial court that appellants suffered no harm as a result of Elizabeth Swenson conveying the partnership property to the Swenson Corporation fails to address the issue of appellants' complaint and is immaterial. In *Harvey v. Casebeer*, 531 S.W.2d 206 (Tex.Civ.App.— Tyler 1975, no writ), the court said:

"A trustee shall not buy or sell, directly or indirectly, any property belonging to the trust estate, from or to itself. Tex. Rev.Civ.Stat.Ann. art. 7425b–12. Self-dealing transactions may be attacked by the beneficiary even though he has suffered no damages and even though the trustee has acted in good faith. *Slay v. Burnett Trust*, 143 Tex. 621, 187 S.W.2d 377, 389 (1945)."

Texas cases have treated a trustee guilty of self-dealing as a wrongdoer whether he was or not and have applied strict liability in such cases as a matter of law. *Hamman v. Ritchie*, 547 S.W.2d 698 (Tex.Civ.App.— Fort Worth 1977, writ ref'd n. r. e.); *Slay v. Burnett Trust, supra; Langford v. Shamburger*, 417 S.W.2d 438 (Tex.Civ.App.—Fort Worth 1967, writ ref'd n. r. e.).

■ Appellees urge that Tex.Rev.Civ. Stat. Ann. art. 6132a, Sec. 10, which states that a general partner may not possess partnership property "for other than partnership purposes," creates an exception in the present case. We disagree. Possession or the right to possess may often co-exist with legal title but, the terms in a legal sense, are never synonymous.

■ This is a suit in equity and in that realm, the conduct of parties is judged by refined standards. No rules can be prescribed and no attempt should be made to formulate rules for the measurement of conduct by courts of equity, but that such conduct must be measured by standards exacting the utmost fidelity from a general partner who is in complete control of assets and affairs of a limited partnership. *Mac-Donald v. Follett*, 142 Tex. 616, 180 S.W.2d 334 (1944).

Courts of necessity must exact this high standard of fiduciary fidelity. Not only are the unequal positions of the parties inconsistent with any other standard, courts are ill-equipped to discern the extent a conflict of interest *may* have affected the outcome of any given transaction. See Bogert, Trusts and Trustees (2d Ed.) Sec. 543, p. 204. This problem was addressed in *Nabours v. McCord*, 97 Tex. 526, 80 S.W. 595, 598 (1904), which quotes Judge Wheeler who in *Shannon v. Marmaduke*, 14 Tex. 217 (1855), said:

"The rule is founded on the danger of imposition and the presumption of the existence of fraud inaccessible to the eye of the court. The policy of the rule is to shut the door against temptation, and which, in the cases in which such relationship exists, is deemed to be of itself sufficient to create the disqualification."

■ Applying these equitable principles, we have no difficulty in concluding that, under the facts of the present case, appellee, Elizabeth Swenson has breached her fiduciary duty to the limited partners as a matter of law and that appellants are entitled to equitable restitution to the extent of their respective partnership contribution.

In reaching this decision, we realize that the conveyance of the partnership property to the Swenson Corporation is atypical of the sales in the cases herein cited. We also accept the trial court's finding that there was no commingling of partnership funds as that term is commonly applied in the cases.

The undisputed facts, however, show that such a conveyance of partnership property was made and the proceeds from the sale of partnership property were deposited in the Swenson Corporation account, both without the knowledge or consent of appellants.

When these two facts are considered along with the additional facts that the Swenson Corporation was the general contractor in absolute control of the partnership's destiny and that Elizabeth Swenson had the right to the exclusive listing when the finished product was sold, the case takes on an aura of self-dealing which this Court is unable to condone.

■ Appellants correctly contend that Elizabeth Swenson violated the partnership agreement as well as her fiduciary duty of loyalty by depositing partnership funds directly into the bank account of Swenson Corporation. We do not agree with appellants, however, that the trial court as the finder of fact, erred as a matter of law in finding that there was no commingling. The mixing of dollars belonging to different persons, if the number owned by each claimant is known, does not constitute commingling as such term is used to justify awarding the entire amount to the injured party. *Farrow v. Farrow*, 238 S.W.2d 255 (Tex.Civ.App.—Austin 1951, no writ).

■ Neither do we agree that these acts amounted to the conversion of partnership funds. Where money is involved, it is subject to conversion only when it can be described or identified as a specific chattel, but not where an indebtedness may be discharged by the payment of money generally. *Gronberg v. York*, 568 S.W.2d 139 (Tex. Civ.App.—Tyler 1978, writ ref'd n. r. e.); *Hull v. Freedman*, 383 S.W.2d 236 (Tex.Civ. App.—Fort Worth 1964, writ ref'd n. r. e.).

■ Appellant next urges that the trial court erred when it failed to find Elizabeth Swenson violated Tex.Rev.Civ.Stat.Ann. art. 6573a, Sections 15(4)(E) and 15(4)(Y) and in failing to award appellants statutory damages under Section 19(b). We find these points without merit.

Section 15 provides that the Texas Real Estate Commission may suspend or revoke a license issued under the provisions of art. 6573a at any time when it has been determined the person holding the license has done certain specified acts. Appellant argues Elizabeth Swenson should have been found in violation of Section 15(4)(E) in "failing within a reasonable time properly to account for or remit money coming into his possession which belongs to others, or commingling money belonging to others with his own funds;" and Section 15(4)(Y) "failing within a reasonable time to deposit money received as escrow agent in a real

estate transaction, either in trust with a title company authorized to do business in this state, or in a custodial, trust, or escrow account maintained for that purpose in a banking institution authorized to do business in this state."

We assume *arguendo* that Elizabeth Swenson violated both Sections 15(4)(E) and 15(4)(Y) in her handling the partnership funds. Appellants are still not entitled under Section 19(b) to any recovery because of this fact. Section 19 provides statutory damages for persons aggrieved by unlicensed salesmen or brokers and has nothing to do with brokers who are licensed under the act.

■ Finally, appellant complains that the district court erred in awarding appellant only the cost of materials for repairing "Retreat." Appellees admitted defective construction of "Retreat" in the amount of $7,859.60. The district court subtracted this amount from the amount the partnership owed the corporation. Appellant, however, contends the district court should have awarded them three times the cost of materials as damages attributable to the cost of labor.

In trying to establish the amount of damages to "Retreat," appellants used the testimony of John Lloyd, the architect who purchased the home. Mr. Lloyd testified the materials to repair "Retreat" cost $7,859.60, with Lloyd performing the labor. He further said a "rule of thumb" often used was that labor was estimated at three times the cost of materials. This proof does not meet the standard of reasonableness and certainty which is required. In *Warner v. Irving Lumber Co.,* 584 S.W.2d 893 (Tex.Civ.App. —Dallas 1979, no writ), the court stated that the correct measure of damages for breach of building contract is the reasonable cost of remedying the defects which constitute the breach. There is testimony by Mr. Lloyd that he made several changes in the house based on his own taste and not on necessity. There was no specific testimony breaking down what had to be repaired and what he repaired or changed because of his own tastes. Thus the amount which the trial court awarded was based not on evidence but, upon admissions made by the defendant.

The judgment of the trial court is reversed as to appellants' right to equitable restitution, and judgment is now rendered against Elizabeth Swenson in the amount of $18,000.00. Robert Brown is awarded the sum of $2,000.00 and David Crenshaw is awarded the sum of $16,000.00. The judgment of the trial court is in all other matters affirmed.

Reversed and Rendered in Part and in Part Affirmed.

## ON MOTION FOR REHEARING

SHANNON, Justice.

■ All parties have moved for rehearing. Appellants have brought to our attention failure of the judgment to award post judgment interest. Under Tex.Rev.Civ. Stat.Ann. art. 5069–1.05, appellants are entitled to nine percent interest on their judgment from the date of judgment. The date of judgment referred to in art. 5069–1.05 is the judgment of the trial court. Having found the trial court's judgment to be erroneous in part, the judgment of this Court takes the place of the lower court judgment. Tex.R.Civ.P. 434. Appellants are, therefore, entitled to post-judgment interest at nine percent from the date of the trial court's judgment, that being December 21, 1979.

■ Post-judgment interest is a creation of statute to which appellants are entitled whether or not specifically awarded in the judgment. *Trinity Portland Cement v. Coastal Indus. Water Authority,* 551 S.W.2d 76 (Tex.Civ.App.1977), *rev'd on other grounds,* 563 S.W.2d 916 (Tex.1978). To avoid the possibility of appellants having to file a declaratory judgment to collect this interest, this Court reforms the judgment to specifically allow post-judgment interest. Robert Brown is awarded the sum of $2,000 with nine percent interest from December 21, 1979. David Crenshaw is awarded the sum of $16,000 with nine percent interest from December 21, 1979.

Points of error raised by both appellants and appellees have been carefully considered and are found to be without merit. Both motions for rehearing are overruled.

Reversed and Rendered in Part and in Part Affirmed on Motion for Rehearing.

POWERS, J., not sitting.