GULF, C. & S. F. R. CO. v. PRATT. (No. 35.)*

(Court of Civil Appeals of Texas. Beaumont. Feb. 3, 1916. Rehearing Denied Feb. 24, 1916.)

1. TROVER AND CONVERSION ⬮1—"CONVERSION"—DEFINITION.

Conversion is any unauthorized act of dominion or ownership which deprives a man of his personal property permanently or for a definite length of time.

[Ed. Note.—For other cases, see Trover and Conversion, Cent. Dig. §§ 1, 2; Dec. Dig. ⬮1.

For other definitions, see Words and Phrases, First and Second Series, Conversion.]

2. TROVER AND CONVERSION ⬮22—TAKING—ASSENT OR RATIFICATION.

Where the owner expressly or impliedly assents to or ratifies the taking, use, or disposition of his property, he cannot recover for conversion thereof.

[Ed. Note.—For other cases, see Trover and Conversion, Cent. Dig. §§ 152–162, 167–169; Dec. Dig. ⬮22.]

3. TROVER AND CONVERSION ⬮1—"CONVERSION"—INTENT—POSITIVE ACT.

To constitute a conversion there must not only be an intent to convert, but such intent must be accompanied by a positive act of conversion.

[Ed. Note.—For other cases, see Trover and Conversion, Cent. Dig. §§ 1, 2; Dec. Dig. ⬮1.]

4. TROVER AND CONVERSION ⬮35 — UNAUTHORIZED TAKING—INTENT—PRESUMPTION.

Where an act of conversion is unauthorized by the owner, the intent to convert will be conclusively presumed.

[Ed. Note.—For other cases, see Trover and Conversion, Cent. Dig. §§ 215, 216; Dec. Dig. ⬮35.]

5. TROVER AND CONVERSION ⬮7 — TRAIN DAMAGING AUTOMOBILE — REPAIRING AND HOLDING FOR OWNER.

Plaintiff's automobile was struck on a highway crossing by defendant's train. Plaintiff left the automobile on the right of way for several days refusing to remove it. Thereafter the company's claim agent consulted plaintiff's attorney as to the disposition of the car, suggesting that the company be allowed to take it to another town for repair, and was advised that he would have to "back his own judgment." The car was taken and repaired as suggested, and was afterwards held for the owner's instructions with notice to the owner. The company held the automobile in storage for some time while futile negotiations for settlement took place, which ended with the bringing of this action in conversion. *Held* that, since defendant attempted to exercise no right of ownership over the car, and did not take it without the owner's consent, defendant was not guilty of conversion.

[Ed. Note.—For other cases, see Trover and Conversion, Cent. Dig. §§ 51–57; Dec. Dig. ⬮7.]

6. TROVER AND CONVERSION ⬮10—AUTOMOBILE DAMAGED BY TRAIN — HOLDING FOR OWNER—ILLEGAL USE OR ABUSE.

The fact that, while defendant held such car in storage awaiting plaintiff's order for disposition, certain persons who were unauthorized by the company took the automobile out and slightly damaged it, whereupon the defendant repaired the damage and immediately removed the automobile to its roundhouse, where it was locked up, was not such an illegal use or abuse

---

of the automobile as constituted a conversion by defendant.

[Ed. Note.—For other cases, see Trover and Conversion, Cent. Dig. §§ 84–94; Dec. Dig. ⊕⇒10.]

Appeal from District Court, Sabine County; A. E. Davis, Judge.

Action by G. E. Pratt against the Gulf, Colorado & Santa Fé Railroad Company. Judgment for plaintiff, and defendant appeals. Reversed.

F. J. & C. T. Duff, of Beaumont, and Hamilton & Hamilton, of Hemphill, for appellant. W. F. Goodrich and J. W. Minton, both of Hemphill, for appellee.

CONLEY, C. J. On August 31, 1914, G. E. Pratt, appellee, filed a petition in the district court of Sabine county, Tex., against the Gulf, Colorado & Santa Fé Railroad Company, alleging a cause of action substantially as follows: That on or about August 31, 1913, the appellee owned a certain Studebaker automobile, being a seven-passenger, 35 horse power car, 1913 model, worth $1,171.50; that on or about the 1st day of August, 1913, the appellant, Gulf, Colorado & Santa Fé Railroad Company, took possession of said automobile, and converted the same to its own use and benefit, and removed the same out of Sabine county, and has continuously had same in its possession and under its dominion and control; that said conversion was without appellee's consent, and appellant took possession of said automobile at Bronson, Tex., and transported it to Beaumont. Appellee prayed for damages in the sum of $1,171.50.

The appellant answered by general demurrer, and specially denied that it was guilty of conversion, and by special answer it alleged that it, through no negligence or fault on its part, damaged said automobile belonging to appellee; that for the purpose of repairing said car it removed the same to Beaumont, where it had an expert mechanic to repair the car, and put it in good condition; that since said car has been repaired it has been tendered back to the appellee, and request made that appellee advise it what disposition he wanted made of the same, but that appellee had refused to accept said car or notify appellant what he wished done with it.

A jury was waived, and matters of fact and law were submitted to the court. The court, on the 17th of April, 1915, rendered judgment in favor of appellee for the full amount sued for, to wit, $1,171.50, with interest at 6 per cent. per annum from August 1, 1913, from which judgment appellant has duly perfected an appeal to this court.

Under the first assignment of error appellant contends, in substance, that the evidence is undisputed that at the time the appellant herein took said automobile at Bronson and removed it to Beaumont its purpose in taking the automobile was to have same repaired; the evidence further showing that the appellee knew that the appellant was going to remove the automobile from Bronson to Beaumont for such purposes, and acquiesced and consented to said removal, and that therefore the court erred in rendering judgment in favor of plaintiff in a suit for conversion.

[1] "Conversion" is defined to be "any unauthorized act which deprives a man of his property permanently or for a definite length of time." France v. Gibson, 101 S. W. 537; Union Stockyards et al. v. Mallory et al., 157 Ill. 554, 41 N. E. 888, 48 Am. St. Rep. 341.

[2-5] The legal wrong denominated a "conversion" is:

"Any unauthorized act of dominion or ownership exercised by one person over personal property belonging to another. * * * Acts of conversion have been classified as follows: (1) A taking from the owner without consent; (2) an unwarranted assumption of ownership; (3) an illegal use or abuse of the chattel; and (4) a wrongful detention after demand. It is a well-settled rule that, if the owner expressly or impliedly assents to or ratifies the taking, use, or disposition of his property, he cannot recover for conversion thereof. * * *"

There must not only be an intent to convert, but it must be accompanied by positive act of conversion. However, if the act was unauthorized by the owner, an intent to convert will be conclusively presumed. 38 Cyc. 2005–2010.

[6] An analysis of the evidence in the case justifies the following conclusions, which are practically undisputed: On July 18, 1913, the railroad company at Bronson, Tex., damaged appellee's automobile, which at the time was being operated by a son of the appellee. The accident happened on the company's right of way over one of the public crossings at Bronson. After the accident the person in charge of the car left it on the right of way, where it remained for three or four days without the appellee or any one for him looking out for it. Subsequently one of appellee's sons went to see the car at Bronson, and refused to have anything to do with it. The car was thereafter taken up by the railroad company and removed from the right of way to shelter. On or about the 1st of August the claim agent for the railroad company went to Bronson to inquire into the matter of the accident, and, thinking and being advised that the appellee was represented by counsel at Hemphill, he called up over long-distance telephone the person to whom he was directed as counsel, and had a conversation with him as to the measure of damages to the car, and what was the most advisable thing to do. The claim agent stated that there was no repair shop at Bronson, where the car could be repaired, and that he thought it would be well to take the automobile to Beaumont to have the damages repaired, and then return it to the owner. The lawyer with whom the conversation was had advised the claim agent that he had no authority

from Mr. Pratt to act in the matter, but that he would call him (Mr. Pratt) on the phone, which he did. Mr. Pratt was then advised of the suggestion made by the claim agent, but refused to tell him what to do with the car, saying, in substance, that he would have to back his own judgment. It is clear that Mr. Pratt knew the intention and purpose of the claim agent to remove the car to Beaumont for repairs, and he made no protest, nor did he by word or act disapprove the suggestion. The car was taken to Beaumont and repaired. After this was done, one of appellee's sons, in response to a letter from the claim agent, went to Beaumont and inspected the automobile. The repairs on the car seemed to have been satisfactorily done, and the matter of settlement was then the only thing to be adjusted. Considerable correspondence in the meantime had passed between the claim agent and counsel, who, the claim agent thought, represented the appellee. The sum and substance of the correspondence was repeated requests upon the part of the claim agent for directions as to how to dispose of the car; the claim agent insisting that he was ready to deliver the same back to the owner; that the car had been repaired, and was in good shape. The letters also show that, in addition to placing the car back in good repair, the appellee desired a large sum for damages besides, ranging from $1,000 to $500. The claim agent would not agree to the payment of any such damages, and thus the matter stood when appellee's son came to Beaumont. Upon his arrival here there was some negotiation between the claim agent and appellee's son as to the adjustment of damages claimed by the appellee, but the claim agent insisted that the final adjustment of the entire matter would have to be done through counsel, who, he thought, represented the appellee. Other letters then passed between counsel for appellee and the claim agent on the subject of the delivery of the car generally, and the amount of damages to be paid by the company. No settlement was reached by the parties, and this suit was then filed for conversion.

We are unable to see any element of conversion in this case. The railroad company at no time undertook to exercise any right of ownership over the automobile. The car was not taken from the owner without his consent. The evidence shows that it was abandoned on the right of way by the owner and by appellee's son. The appellee knew that the car would be removed to Beaumont for repairs, and he made no protest, nor did he signify any dissent thereto.

There is some evidence in the record which shows that while the car was in storage in the garage at Beaumont on two occasions some person or persons, who were unauthorized and without the consent of the claim agent, who had the car under his supervision and control, took it out, and that it was slightly damaged by reason thereof. When this matter was discovered, the damages were repaired, and the car immediately removed to the roundhouse of the appellant, where the wheels were taken off, and the car locked up, so as to avoid repetitions of such occurrences. Certainly, under such circumstances, we would not be warranted in saying that this was such illegal use or abuse of the chattel as constituted an act of conversion.

If a person is advised by one that his property is going to be taken for the purpose of doing something to it of benefit to the owner, that is, to have it repaired, and he does not object to nor forbid the same being done, he certainly acquiesces in such taking, and cannot base an action of conversion alone on such circumstances.

There is no evidence in the record of any wrongful detention after demand made for the car. As a matter of fact, there was no demand made for the return of the car, but the evidence, on the other hand, shows that appellant was insisting that it be permitted to return the car to the owner, and his refusal to accept it; he in turn demanding a large sum of money in addition to the return of the car, and refusing to accept the car unless such money was paid. We are therefore of opinion that this assignment of error should be sustained.

The disposition of this cause makes it unnecessary to consider the other assignments of error.

Judgment will therefore be reversed, and here rendered for appellant; and it is so ordered.