Roland B. Hughes et al., Appellants, v. Encyclopaedia Britannica, Inc., Appellee.

Gen. No. 46,173.

Opinion filed March 8, 1954. Rehearing denied March 24, 1954. Released for publication March 24, 1954.

Rubenstein & Becker, of Chicago, for appellants; Harry Becker, and Bernard S. Rooth, both of Chicago, of counsel.

Lederer, Livingston, Kahn & Adsit, of Chicago, for appellee; Leo H. Arnstein, and Herbert E. Ruben, both of Chicago, of counsel.

Mr. Justice Burke delivered the opinion of the court.

Plaintiffs filed a complaint as a class action for specific performance by defendant of its plan to purchase annuities for its employees. Plaintiffs appeal from the decree dismissing the complaint, as amended, for want of equity. The complaint alleges that on February 1, 1944, defendant put into effect a retirement income plan for its employees by which it agreed to purchase retirement insurance for the employees on February 1st of each year; that pursuant to the plan defendant entered into a group annuity contract with the Equitable Life Assurance Society, hereinafter for convenience called the Society; and that it failed to make two of such payments. A second count alleges that on June 28, 1948, and January 28, 1949, it sent notices to its employees, implicit in each of which was a promise to make the premium deposits; that the statements and promises were such that the defendant should reasonably expect to induce the plaintiffs and all employees to continue in the employ of the defendant in order to obtain the benefits of the plan; and that such employees were therefore entitled, as a matter of right and justice, to have purchased for them the retirement annuities as set forth in the plan. Attached to the complaint is the

plan and the group annuity contract. Plaintiffs' theory is that they state a good cause of action in that the plan constitutes a valid contract between defendant and its employees, and that the notices, standing alone, render the defendant liable under the doctrine of promissory estoppel. Defendant's theory is that the plan, the only document to which plaintiffs may look to determine their rights, did not and could not give rise to an enforceable, unilateral contract; that no cause of action lies under the alternative theory of promissory estoppel; and that the suit cannot be brought as a class action.

██ ██ In our view the contract which the defendant entered into with the Society for the implementation of the pension plan is not relevant to any issue in the case. Plaintiffs in asserting any alleged rights against defendant can look only to the plan promulgated to them by the defendant. In a proper case plaintiffs as third-party donee beneficiaries could enforce the contract against the Society in the event that it refused to pay annuities which had been purchased for the employees by the defendant.

We agree with defendant that its noncontributory pension plan did not give rise to an enforceable unilateral contract, and that by its terms the plan precludes a construction by which a contractual obligation can arise in favor of plaintiffs. Section 12 provides that the Society will issue for delivery to each participant under the plan a certificate of his inclusion under the group annuity contract issued to it by the Society; that benefits under the plan will be governed in every respect by the group annuity contract; that the only rights or benefits that any participant may have under the plan shall consist only of such rights and benefits purchased for him under the group annuity contract; and that no participant shall have

517

rights or benefits under the plan against the defendant. Under section 13 a participant has no right to assign, transfer or anticipate his interest in any payments under the plan. Section 14 states that defendant expects to continue the plan indefinitely "but necessarily reserves the right to change, amend or discontinue the Plan should future conditions in the judgment of the Company warrant such action." This section also states that no change or discontinuance for any reason whatsoever can affect the retirement annuities purchased for employees prior to the date of the change or discontinuance, and that if the plan is discontinued, the participant, whether or not he remains in the employ of the defendant, will receive at his retirement date the retirement income that has been purchased for him prior to the date of its discontinuance. Section 15 states that all of the funds paid by the defendant to the Society will be used solely to purchase annuities for participants under the plan and that any sums refundable by the Society under the contract because of the termination of participants' services without vested retirement income will be applied within the year so refundable, or within the next succeeding year, toward the purchase of annuities as therein provided for participants remaining under the plan. This section further provides that "the adoption of this Plan is entirely voluntary on the part of the Company and it shall not be construed as creating a contractual relationship between the Company and an eligible employee, nor shall it be construed as a term of any employment contract, or be interpreted to give the right to any employee to be retained in the service of the Company."

 These provisions say that the defendant is paying the entire cost of the plan; that the payments are voluntary; that no contractual relationship is intended or created between the defendant and its employees;

that employee rights under the plan arise only after annuities are purchased from the Society and that such rights arise only against the Society and with respect to the purchased annuities; and that the defendant reserves the right to amend, change or discontinue the plan if, in its exclusive judgment, future conditions warrant such action. We are satisfied that under the law of this State the pension plan promulgated by the defendant does not give rise to a contractual relationship with the defendant. See *Umshler v. Umshler,* 332 Ill. App. 494. The weight of authority in cases outside of Illinois also support that view. See *Menke v. Thompson,* 140 F.2d 786; *Fickling v. Pollard,* 51 Ga. App. 54, 179 S. E. 582; *Shear Co. v. Harrington* (Tex. Civ. App.), 266 S. W. 554; *McNevin v. Solvay Process Co.,* 32 N. Y. App. Div. 610, 53 N. Y. S. 98; *Webster v. Southwestern Bell Telephone Co.* (Tex. Civ. App.), 153 S.W.2d 498.

 Defendant concedes that an employer receives a benefit from instituting a pension plan by way of increased stability of employment and in the greater security and contentment of its employees and that it is largely for this reason it instituted and presently maintains such a program. It does not follow, however, that where a pension plan is placed into effect the employee thereby acquires a vested right to have the plan kept in effect. Plaintiffs rely on *Psutka v. Michigan Alkali Co.,* 274 Mich. 318, 264 N. W. 385, and *Tilbert v. Eagle Lock Co.,* 116 Conn. 357, 165 Atl. 205. In these cases employers' death-benefit programs which were unenforceable as contracts by their express terms were treated as contracts in order to avoid the otherwise harsh result of depriving an employee's beneficiary of accrued death benefits. We do not believe that the reasoning of these cases can be applied to the factual situation at bar. Here there is an attempt to require the

defendant to purchase annuities under a noncontributory pension plan which will only at a later and contingent date give rise to pension payments to the employees. In the instant case the defendant has exercised its right to discontinue purchasing more annuities. Plaintiffs' action must fail whether on the theory that the plan constitutes an unenforceable gratuity, or on the theory that if contractual, it is unenforceable by its express terms. A pension, like any other form of employee benefit, can be bargained for, made the subject of an enforceable contract, given in the form of a gift, or set up in a plan containing provisions which vest the employer with complete discretion to terminate or continue the plan or to grant or withhold accrued pension benefits. The plan in the instant case may not be enforced by the plaintiffs against the defendant so as to require it to continue purchasing annuities thereunder. Plaintiffs suggest that when defendant sought and secured qualification of the plan under the Internal Revenue Code, it is doubtful that it labeled the plan "an unenforceable gratuity." We understand that section 165 of the Code relates to the fixed and irrevocable obligation created after contributions have been made under the plan and not to any obligation to place a plan in effect or to continue it in effect. Defendant's plan qualified under this provision as once payments were made to the Society, none of such payments could be used or diverted to purposes other than the exclusive benefit of its employees or their beneficiaries.

██ ██ The second count is based on the theory that the defendant is liable under the doctrine of promissory estoppel discussed in Restatement of the Law, Contracts, section 90, that "a promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided

only by enforcement of the promise." Plaintiffs state that a reading of the plan makes it obvious that the employer should have reasonably expected that it would induce continued service on the part of the employees, which it did, and that if the promise is not enforced, then obviously an injustice has been done to the employees. They state that on February 21, 1948, defendant failed to make the payment then due and that on June 28, 1948, it wrote its employees that under its contract with the Society "the premium payment may be made either at the beginning or end of the policy year," and that on January 28, 1949, the defendant advised the employees it was making the payment referred to before January 31, 1949, and "again exercising the option of not paying the 1949 premium deposit on the first day of February, 1949." Plaintiffs argue that the promise of eventual payment, implicit in the notices, the reasonable expectation that the promise would induce continual service and the obvious injustice done to the employees when the promise was not kept, constitute ample grounds for invoking the doctrine of promissory estoppel. In support of its position plaintiffs also cite Williston on Contracts, Vol. 1, section 140 (1936) ; *Estate of Beatty v. Western College of Toledo,* 177 Ill. 280, 292; *Estate of Switzer v. Gertenbach,* 122 Ill. App. 26, 29; *Richelieu Hotel Co. v. International Military Encampment Co.,* 140 Ill. 248, 264; *West v. Hunt Foods, Inc.,* 101 Cal.App.2d 597, 225 P.2d 978. This theory seeks to extend the area of enforceable promises beyond the unilateral contract cases and covers situations where the promise of a gift is followed by a detrimental change of position by the prospective donee. In the case at bar plaintiffs have failed to plead a good cause of action under a promissory estoppel theory because there is no fraud, no intent to deceive and no detrimental change of position.

521

The chancellor was right in entering a decree dismissing the complaint, as amended, for want of equity. Therefore, the decree of the superior court of Cook county is affirmed.

*Decree affirmed.*

NIEMEYER, P. J. and FRIEND, J., concur.